# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 08-195 T
(Judge Charles F. Lettow)
_____

DOMINION RESOURCES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

## STIPULATION OF FACTS

The parties hereby stipulate and agree that for the purpose of their cross-motions for summary judgment the following facts are true, subject to the right of the parties to introduce further evidence not inconsistent with this stipulation, and subject to the parties' right to object to any fact herein on the basis of relevance or materiality.  All time periods refer to the tax year at issue, unless otherwise stated.

## JURISDICTIONAL FACTS

1.     On or about October 27, 1997, plaintiff timely filed with the Internal Revenue Service ("IRS") Form 1120, U.S. Corporation Income Tax Return, for tax year 1996 ("1996 Form 1120"), on which it reported taxable income of $480,953,396.00.

5191724.4

2.     Plaintiff's 1996 Form 1120 reflected an income tax liability of $137,706,282.00, which was paid in full in a timely manner.

3.     Application of various payments and credits to plaintiff's 1996 Form 1120 account resulted in a claimed overpayment of tax in the amount of $49,168,615.00, which plaintiff elected to credit to tax year 1997.

4.     On October 28, 1999, plaintiff made a payment to the IRS in the amount of $103,813.23, consisting of $84,599.00 in assessed income tax and $19,214.23 of restricted interest, for the year 1996.

5.     On September 25, 2000, plaintiff made a payment to the IRS in the amount of $10,024,531.00, entirely as an advance payment of an audit deficiency in tax for the year 1996.

6.     Effective August 3, 2007, plaintiff and the IRS entered into an agreement on Form 870-AD, Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment ("the Form 870-AD"), a copy of which is attached as Joint Exhibit 1, pursuant to which the IRS agreed that there was an overassessment of plaintiff's 1996 income tax in the amount of $9,564,557.00, all of which has been paid or credited to plaintiff.

7.     On October 24, 2007, pursuant to the Form 870-AD, the IRS refunded to plaintiff $14,579,874.73, relating to the following transactions:

5191724.4

| Date | Transaction | Amount |
|------|-------------|--------|
| 4/29/2005 | Advance payment of Determined deficiency | $10,196.00 |
| 4/29/2005 | Designated payment of Interest | $7,754.00 |
| 10/23/2007 | Interest due to taxpayer | $3,524,385.48 |
| 10/29/2007 | Restricted interest abatement | $1,472,982.25 |
| 10/29/2007 | Abatement of tax by Examination Division | $9,564,557.00 |
| | Total Refund | $14,579,874.73 |

8.     On the Form 870-AD, plaintiff reserved the right to timely file a claim for refund with respect to "the amount of interest properly capitalized by the Internal Revenue Service under section 263 of the Internal Revenue Code of 1986 with respect to 'associated property', as defined in Treasury Regulation § 1.263A-11(e), and any correlative adjustments for the years 1995 through and including 1998."

9.     On October 1, 2007, plaintiff timely filed with the IRS Service Center in Ogden, Utah, a claim for refund for tax year 1996, on Form 1120X, Amended U.S. Corporation Income Tax Return, in the amount of $297,699.00, on the grounds that the IRS improperly required plaintiff to capitalize interest with respect to associated property.  A copy of the Form 1120X is attached as Joint Exhibit 2.

5191724.4

10.   Plaintiff timely filed its claim for refund for 1996 under section 6511(c) of the Internal Revenue Code of 1986 ("the Code") prior to 6 months after the expiration of the period within which an assessment could be made pursuant to an agreement under the provisions of section 6501(c)(4), extending the period within which income tax for 1996 could be assessed by the IRS.

11.   On November 1, 2007, the IRS sent plaintiff Letter 569, a copy of which is attached as Joint Exhibit 3, proposing to fully disallow plaintiff's claim for refund.  On March 24, 2008, the IRS sent plaintiff Letter 906, a copy of which is attached as Joint Exhibit 4, stating the plaintiff's claim for refund was fully disallowed.

12.   The timeliness of the filing of the complaint in this action is not at issue.

## BACKGROUND FACTS

13.   Plaintiff is a corporation organized under the laws of Virginia.

14.   Plaintiff is primarily engaged in the business of furnishing electrical power and natural gas to individual and commercial customers.

5191724.4

## Possum Point Unit 4

15.     During 1996, Virginia Electric & Power Company, a subsidiary of plaintiff, owned and operated the Possum Point Power Station ("Possum Point"), a coal fired electric generating plant located at Dumfries, Virginia.

16.     Possum Point contains six independent generating units of different megawatt capacities, two of which, Units 1 and 2, were retired in the early 1990s.

17.     Possum Point's generating units constitute "real property" within the meaning of Treas. Reg. § 1.263A-8(c)(1) and (3).

18.     During the period March 9, 1996 through May 13, 1996, plaintiff replaced the existing coal burners (these burners blow pulverized coal into the boiler) in the eight lower corners of the boiler in Possum Point Unit 4 (each of the lower corners of the boiler houses an assembly containing four coal burners) with low NOx (nitrous oxide) burners for the purpose of reducing pollution in accordance with the requirements of the Clean Air Act of 1990.  A statement of the scope of this work is attached as Joint Exhibit 5.

19.     The replacement of the existing Possum Point Unit 4 burners with the low NOx burners required that plaintiff temporarily remove from service the entire Unit 4 generating plant during the period March 9, 1996 through May 13, 1996.

20.     On August 21, 2000, the IRS issued to plaintiff a Form 886A, Explanation of Changes (*i.e.*, the IRS's proposed audit adjustments), increasing

5191724.4

capitalized interest with respect to a number of plaintiff's projects. One such project involved the Possum Point Unit 4 electric generating plant. The IRS asserted that plaintiff had failed to capitalize interest with respect to the total adjusted basis of certain Possum Point Unit 4 assets referred to by the IRS as "associated property" within the meaning of Treas. Reg. § 1.263A-11(e)(1)(ii)(B). These assets, hereinafter referred to as the "disputed Possum Point property," consist of additions or improvements to Possum Point Unit 4, placed in service during the period 1980 to 1994. They represent parts of Possum Point Unit 4, other than the new burners, that were required to be taken out of service to facilitate the installation of the burners. These assets and their total adjusted basis were set forth by the IRS in the Form 886A. For the purpose of computing capitalized interest, the IRS included the total $2,370,100.00 adjusted basis of the disputed Possum Point property in "production expenditures" for purposes of Code § 263A(f)(4)(C) and in "accumulated production expenditures" for purposes of Treas. Reg. § 1.263A-11(e). See Joint Exhibit 6. ("PISD" on page JX 0069 of Joint Exhibit 6 refers to the placed in service date of the assets listed on each line of that page.) The IRS considered these assets to be "functionally interdependent" with the burners for the purpose of determining the amount of capitalized interest with respect to the disputed Possum Point assets.

5191724.4

21.     On December 18, 2001, plaintiff submitted to the IRS a request that the issues arising under Code § 263A be referred to the IRS National Office for technical advice.  A copy of that Technical Advice Request is attached hereto as Joint Exhibit 7.

22.  On August 21, 2002, the IRS issued a Technical Advice Memorandum (TAM) with respect to the § 263A issue in this case, a copy of which is attached as Joint Exhibit 8.

23.     Subsequently, the IRS issued a revised Form 886A, dated May 16, 2003, a copy of which is attached as Joint Exhibit 9, regarding the IRS's proposal to increase capitalized interest on a number of plaintiff's projects, including Possum Point Unit 4.  The IRS made the same assertions as noted in paragraph 20, but revised the list of assets comprising the disputed Possum Point property.  In the revised Form 886A, rather than listing the items of disputed Possum Point property with a brief description of each item, the IRS noted the FERC accounts (312 or 314, 18 C.F.R. 312 and 314; see Joint Exhibit 10) to which the various items were assigned.  The total adjusted basis of the disputed Possum Point property taken into consideration by the IRS in the revised Form 886A was $9,883,982.00.  ("Vintage" on page JX 000120 of Joint Exhibit 9 refers to the placed in service date of the assets listed on each line of that page.).

24.     Attached as Joint Exhibit 10 are plaintiff's FERC 312 and FERC 314 account balances showing the unadjusted book basis of each of the Possum Point Unit 4 assets, by vintage year, that remained in service as of December 31, 1996.

25.     The estimated cost of replacing the existing Possum Point Unit 4 burners with the low NOx burners on the date the production period of the replacement began, within the meaning of Treas. Reg. §1.263A-11(e)(2), was $10,214,342.00.

26.     The actual cost of replacing the existing Possum Point Unit 4 burners with the low NOx burners was later determined to be $5,355,308.00.

27.     Plaintiff originally treated the entire cost of replacement of the existing Possum Point Unit 4 burners as a capital expenditure on its 1996 tax return.

28.     Subsequently, plaintiff contended that the entire cost of the replacement of the existing Possum Point Unit 4 burners should be deducted as a repair.

29.     For the year 1996, plaintiff did not capitalize any interest on its federal income tax return with respect to the disputed Possum Point property, although it did capitalize interest with respect to the cost of the low NOx burner project, the amount of which is not in dispute.

5191724.4

30.    For the year 1996, the IRS initially determined that plaintiff should have capitalized $42,509.00 of interest with respect to the disputed Possum Point property.  See page JX 00070 of Joint Exhibit 6.

31.    When the IRS issued its revised Form 886A, it determined that the proper amount of interest to be capitalized with respect to the disputed Possum Point property (described by the IRS as "associated property") was $177,274.00. See page JX 000121 of Joint Exhibit 9.

32.    For the purpose of determining capitalized interest during 1996 with respect to Possum Point Unit 4, plaintiff elected to use monthly "measurement dates" within the meaning of Treas. Reg. § 1.263A-9(f)(2).

33.    For the purpose of determining capitalized interest during 1996 with respect to Possum Point Unit 4, plaintiff and the IRS agreed to use a weighted average interest rate of 7.17419%.

34.    On November 26, 2003 plaintiff filed a Protest with the IRS Appeals Office regarding the assessment of capitalized interest on associated property costs.

35.    Subsequently, in the IRS Appeals process, a number of issues between the parties were settled, culminating in an agreement previously noted as Joint Exhibit 1.

36.    Fifty percent of the $5,355,308.00 cost of replacing the existing Possum Point Unit 4 burners with the low NOx burners, *i.e.*, $2,677,654.00, was

5191724.4

treated as a deductible repair while the remaining 50 percent was treated as a capital expenditure.

37.    The amount of interest with respect to the disputed Possum Point property actually capitalized by the IRS was computed as $88,637.00 (50% of $177,274.00).

38.    Plaintiff paid the tax due on the $88,637.00 of capitalized interest referred to in paragraph 37, net of depreciation, and has never received a refund of such tax.  Plaintiff was allowed $3,324.00 of depreciation with respect to this interest in 1996, and plaintiff has continued to claim depreciation with respect to this interest annually.

39.    The disputed Possum Point property listed in Joint Exhibit 9 was not used in the production of the Unit 4 NOx burners within the meaning of Treas. Reg. § 1.263A-11(d).

40.    During the period March 9, 1996 through May 13, 1996, plaintiff had no indebtedness outstanding directly attributable to production expenditures with respect to Possum Point Unit 4.

41.    During the period March 9, 1996 through May 13, 1996, plaintiff's total interest expense was more than sufficient to support the amount of interest capitalized by the IRS with respect to Possum Point if the defendant prevails in this litigation.

5191724.4

## Mount Storm Unit 3

42.     During 1996, Virginia Electric & Power Co., a subsidiary of plaintiff, owned and operated the Mount Storm Power Station ("Mount Storm"), a coal fired electric generating plant located at Mount Storm, West Virginia.

43.     Mount Storm contains three independent generating units of different megawatt capacities.

44.     Mount Storm's generating units constitute "real property" within the meaning of Treas. Reg. § 1.263A-8(c)(1) and (3).

45.     During the period September 6, 1996 through December 2, 1996, plaintiff replaced the existing coal burners in the eight lower corners of the boiler in Mount Storm Unit 3 with low NOx (nitrous oxide) burners for the purpose of reducing pollution in accordance with the requirements of the Clean Air Act of 1990.

46.     The replacement of the existing Mount Storm burners with the low NOx burners required that plaintiff temporarily withdraw from service the entire Unit 3 generating plant during the period September 6, 1996 through December 2, 1996.

47.     On August 21, 2000, the IRS issued to plaintiff a Form 886A, Explanation of Changes (*i.e.*, the IRS's proposed audit adjustments), increasing capitalized interest with respect to a number of plaintiff's projects.  One such

5191724.4

project involved the Mount Storm Unit 3 electric generating plant.  The IRS

asserted that plaintiff had failed to capitalize interest with respect to the total

adjusted basis of certain Mount Storm Unit 3 assets referred to by the IRS as

"associated property" within the meaning of Treas. Reg. § 1.263A-11(e)(1)(ii)(B).

These assets, hereinafter referred to as the "disputed Mount Storm property,"

consist of additions or improvements to Mount Storm Unit 3, placed in service

during the period 1980 to 1994. They represent parts of Mount Storm Unit 3, other

than the new burners, that were required to be taken out of service to facilitate the

installation of the burners. These assets and their total adjusted basis were set forth

by the IRS in the Form 886A.  For the purpose of computing capitalized interest,

the IRS included the total $147,862,475.00 adjusted basis of the disputed Mount

Storm property in "production expenditures" for purposes of Code § 263A(f)(4)(C)

and in "accumulated production expenditures" for purposes of Treas. Reg. §

1.263A-11(e). See Joint Exhibit 6. ("PISD" on page JX 00066 of Joint Exhibit 6

refers to the placed in service date of the assets listed on each line of that page.)

The IRS considered these assets to be "functionally interdependent" with the

burners for the purpose of determining the amount of capitalized interest with

respect to the disputed Mount Storm assets.

    48.    On December 18, 2001, plaintiff submitted to the IRS a request that

the issues arising under Code § 263A be referred to the IRS National Office for

5191724.4

technical advice.  A copy of that Technical Advice Request is attached hereto as Joint Exhibit 7.

49.  On August 21, 2002, the IRS issued a Technical Advice Memorandum (TAM) with respect to the §263 A issue in this case, a copy of which is attached as Joint Exhibit 8.

50.  Subsequently, the IRS issued a revised Form 886A, dated May 16, 2003, a copy of which is attached as Joint Exhibit 9, regarding the IRS's proposal to increase capitalized interest on a number of plaintiff's projects, including Mount Storm Unit 3.  The IRS made the same assertions as noted in paragraph 47, but revised the list of assets comprising the disputed Mount Storm property.  In the revised Form 886A, rather than listing the items of the disputed Mount Storm property with a brief description of each item, the IRS noted the FERC accounts (312 or 314, 18 C.F.R. 312 and 314; see Joint Exhibit 10) to which the various items were assigned.  The total adjusted basis of the disputed Mount Storm property taken into consideration by the IRS in the revised Form 886A was $131,824,851.00.  ("Vintage" on pages JX 000116-000117 of Joint Exhibit 9 refers to the placed in service date of the assets listed on each line of that page.).

51.  Attached as Joint Exhibit 11 are plaintiff's FERC 312 and FERC 314 account balances showing the unadjusted book basis of each of the Mount Storm Unit 3 assets, by vintage year, that remained in service as of December 31, 1996.

5191724.4

52.    The estimated cost of replacing the existing Mount Storm Unit 3 burners with the low NOx burners on the date the production period began, within the meaning of Treas. Reg. §1.263A-11(e)(2), was $11,026,800.00.

53.    The actual cost of replacing the existing Mount Storm Unit 3 burners with the low NOx burners was later determined to be $6,740,425.00.

54.    Plaintiff originally treated the entire cost of replacement of the existing Mount Storm Unit 3 burners as a capital expenditure on its 1996 tax return.

55.    Subsequently, plaintiff contended that the entire cost of the replacement of the existing Mount Storm Unit 3 burners should be deducted as a repair.

56.    For the year 1996, plaintiff did not capitalize any interest on its federal income tax return with respect to the disputed Mount Storm property although it did capitalize interest with respect to the cost of the low NOx burner project, the amount of which is not in dispute.

57.    For the purpose of determining capitalized interest during 1996 with respect to Mount Storm Unit 3, plaintiff elected to use monthly "measurement dates" within the meaning of Treas. Reg. § 1.263A-9(f)(2).

58.    For the purpose of determining capitalized interest during 1996 with respect to Mount Storm Unit 3, plaintiff and the IRS agreed to use a weighted average interest rate of 7.17419%.

59.    For the year 1996, the IRS initially determined that plaintiff should have capitalized $3,535,978.00 of interest with respect to the disputed Mount Storm property.  See page JX 00067 of Joint Exhibit 6.

60.    When the IRS issued its revised Form 886A, it determined that the proper amount of interest to be capitalized with respect to the disputed Mount Storm property (described by the IRS as "associated property") was $3,152,360.00. See page JX 000117 of Joint Exhibit 9.

61.    On November 26, 2003, plaintiff filed a Protest with the IRS regarding the assessment of capitalized interest on associated property costs.

62.     Subsequently, in the IRS appeals process, a number of issues between the parties were settled, culminating in an agreement previously noted as Joint Exhibit 1.

63.    Fifty percent of the $6,740,425.00 cost of replacing the existing Mount Storm Unit 3 burners with the low NOx burners, *i.e.*, $3,370,212.50, was treated as a deductible repair while the remaining 50 percent was treated as a capital expenditure.

5191724.4

64.     The amount of interest with respect to the disputed Mount Storm property actually capitalized by the IRS was computed as $1,576,180.00 (50% of $3,152,360.00).  Plaintiff was allowed $59,107.00 of depreciation with respect to this interest in 1996, and plaintiff has continued to claim depreciation with respect to this interest annually.

65.     Plaintiff paid the tax due on the $1,576,180.00 of capitalized interest referred to in paragraph 64, net of depreciation, and has never received a refund of such tax.

66.     The disputed Mount Storm property listed in Joint Exhibit 11 was not used in the production of the Unit 3 NOx burners within the meaning of Treas. Reg. § 1.263A-11(d).

67.     During the period September 6, 1996 through December 2, 1996, plaintiff had no indebtedness outstanding directly attributable to production expenditures with respect to Mount Storm Unit 3.

68.     During the period September 6, 1996 through December 2, 1996, plaintiff's total interest expense was more than sufficient to support the amount of interest capitalized by the IRS with respect to Mount Storm if the defendant prevails in this litigation.

5191724.4

Plaintiff's counsel has authorized defendant's counsel to file this stipulation as a joint filing.

Respectfully submitted,

February 16, 2010          s/Eric R. Fox
                          ERIC R. FOX
                          Attorney of Record
                          Ivins, Phillips & Barker
                          1700 Pennsylvania Avenue, NW
                          Ste. 600
                          Washington, DC 20006
                          Voice: (202) 393-7600
                          Fax: (202) 393-7601
                          Email: efox@ipbtax.com

                          Attorney for Plaintiff

5191724.4

February 16, 2010     <u>s/ Carl D. Wasserman</u>
CARL D. WASSERMAN
Attorney of Record
United States Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
Voice: (202) 307-6587
Fax: (202) 514-9440
Email: <u>carl.wasserman@usdoj.gov</u>

JOHN A. DiCICCO
*Acting Assistant Attorney General*
STEVEN I. FRAHM
*Chief, Court of Federal Claims Section*
MARY M. ABATE
*Assistant Chief*

February 16, 2010     <u>s/Mary M. Abate</u>
Of Counsel

Attorneys for Defendant

5191724.4